

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

1. THE CITY OF TULSA
2. THE TULSA METROPOLITAN
   UTILITY AUTHORITY

      Plaintiff,

v.

1. TYSON FOODS, INC.,
2. COBB-VANTRESS, INC.,
3. PETERSON FARMS, INC.,
4. SIMMONS FOODS, INC.,
5. CARGILL, INC.,
6. GEORGE'S, INC.,
7. CITY OF DECATUR, ARKANSAS,

      Defendants.

**F I L E D**

DEC 1 0 2001

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Case No. _____

# 01CV0900B(x)

## COMPLAINT

COME NOW the Plaintiffs, The City of Tulsa ("Tulsa") and The Tulsa Metropolitan Utility Authority ("TMUA"), a public trust, and allege as follows:

## JURISDICTION

1.   This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331, 1332 and 42 U.S.C. § 9613(b) (CERCLA). The amount in controversy exceeds the sum of $75,000.00 for each Plaintiff.

## VENUE

2.   The Plaintiffs' Water Supply system, a municipal Water Supply system under Oklahoma law, including Lake Spavinaw, Lake Eucha, Lake Yahola and the City of Tulsa Water Treatment Plant (collectively, the "Water Supply"), is located within this District and provides the source of drinking water to several hundred thousand residents of northeastern Oklahoma who reside in this District. Each of the Plaintiffs resides in this District. The Poultry

*Tyson pd Farms S/I c/J*

Defendants (Defendants numbered 1 through 6 in the caption) are foreign corporations that do business in the State of Oklahoma.   The Poultry Defendants and the Municipal Defendant (Defendant number 7 in the caption) have committed acts and omissions which have caused damages to Plaintiffs' Water Supply in this District.  This is an action for damages and injunctive relief to remedy the Defendants' wrongful pollution of the Water Supply.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b).

## THE PARTIES

3.      Tulsa is a municipal corporation and a political subdivision of the State of Oklahoma.  The TMUA is an Oklahoma public trust established under Oklahoma law for the purpose of operating the Water Supply for the express benefit of the City of Tulsa, as beneficiary of the Trust.  Each Plaintiff's principal place of business is in Tulsa, Tulsa County, Oklahoma. Plaintiffs own the Water Supply including the above named lakes.

4.      Defendant Tyson Foods, Inc. ("Tyson") is a Delaware corporation with its principal place of business in Arkansas or a state other than Oklahoma.  This Defendant is registered and does business in Oklahoma.   In the Spavinaw-Eucha watershed (hereafter described), Tyson maintains approximately 43 poultry farms consisting of approximately 153 houses.

5.      Defendant Cobb-Vantress, Inc. ("Cobb-Vantress") is a Delaware corporation with its principal place of business in Arkansas or a state other than Oklahoma.  This Defendant is registered and does business in Oklahoma. In the Spavinaw-Eucha watershed (hereafter described), Cobb-Vantress maintains approximately 10 poultry farms consisting of approximately 32 houses.

6.      Defendant Peterson Farms, Inc. ("Peterson") is an Arkansas corporation with its principal place of business in Arkansas or a state other than Oklahoma.  This Defendant

does business and is registered in Oklahoma. In the Spavinaw-Eucha watershed (hereafter described), Peterson maintains approximately 186 poultry farms consisting of approximately 595 houses.

7.      Defendant Simmons Foods, Inc. ("Simmons") is an Arkansas corporation with its principal place of business in Arkansas or a state other than Oklahoma. This Defendant is registered and does business in Oklahoma. In the Spavinaw-Eucha watershed (hereafter described), Simmons maintains approximately 38 poultry farms consisting of approximately 106 houses.

8.      Defendant Cargill, Inc. ("Cargill) is a Delaware corporation with its principal place of business in Minnesota, or a state other than Oklahoma. This Defendant is registered and does business in Oklahoma. In the Spavinaw-Eucha watershed (hereafter described), Cargill maintains approximately 10 poultry farms consisting of approximately 43 houses.

9      Defendant George's, Inc. ("George's") is an Arkansas corporation with its principal place of business in Arkansas or a state other than Oklahoma. This Defendant is not registered in, but in fact does business in, Oklahoma. In the Spavinaw-Eucha watershed (hereafter described), George's maintains approximately 7 poultry farms consisting of approximately 19 houses.

10.      Defendant City of Decatur ("Decatur") is a municipal corporation and a political subdivision of the State of Arkansas, located in Benton County, Arkansas.

## FACTUAL ALLEGATIONS

### The Water Supply

11.   In approximately 1924 Tulsa constructed Spavinaw Lake to provide a Water Supply to handle the future needs of Tulsa and other northeast Oklahoma residents. Spavinaw Lake was constructed by building a dam on Spavinaw Creek, located to the east of Tulsa in the Spavinaw Basin.  The lake lies in Mayes and Delaware counties, has a surface area of approximately 1637 acres, and a storage capacity of approximately 32,000 acre feet.  It is currently designated by the Oklahoma Water Quality Standards (OWQS) for the following beneficial uses: public and private water supply, cool water aquatic community, Class I agriculture irrigation, primary body contact recreation and aesthetics.  It has also been designated a sensitive water supply by the Oklahoma Water Resources Board (OWRB).

12.   In approximately 1948 Tulsa completed construction of Lake Yahola to further increase the capacity of its Water Supply.  Lake Yahola lies in Tulsa County, has a surface area of approximately 431 acres, and a storage capacity of approximately 6,445 acre feet. It is currently designated by OWQS as having the following beneficial uses: public and private Water Supply, warm water aquatic community, Class I agriculture irrigation, industrial and municipal process cooling water, primary body contact recreation, and aesthetics.  It is also designated by OWRB as a sensitive water supply.

13.   In approximately 1952, due to additional growth in northeastern Oklahoma, Tulsa constructed Lake Eucha upstream from Lake Spavinaw by building another dam on Spavinaw Creek.  Lake Eucha lies in Delaware County, has a surface area of approximately 2,800 acres, and a storage capacity of approximately 80,000 acre feet.  It is currently designated by the OWQS as having the same beneficial uses as Lake Spavinaw, and is also designated by OWRB as a sensitive water supply.

14. The water collected in Lake Eucha is discharged directly into Lake Spavinaw, and from there approximately 65-70 million gallons per day are piped directly to Lake Yahola. Lake Yahola provides the raw water to the Mohawk Water Treatment Plant, operated by TMUA to make water potable for the drinking water that is furnished to over 400,000 consumers in Tulsa and other towns, cities and water districts in northeastern Oklahoma.

15. Lake Eucha and Lake Spavinaw depend for their water on the stream flow and ground water discharge in the Lake Eucha/Spavinaw Creek watershed ("the watershed"). Spavinaw Creek is a tributary to the Neosho River, which is a tributary to the Arkansas River. The Lake Eucha/Spavinaw watershed encompasses approximately 415 square miles, approximately 70% of which area lies in Delaware and Mayes Counties in Oklahoma, and the remaining 30% of which lies in Benton County, Arkansas. Other named tributaries which feed into Spavinaw Creek are Brush Creek, Dry Creek, Rattlesnake Creek and the lower Beaty Creek, which watersheds are located in Oklahoma, and the upper Spavinaw Creek and upper Beaty Creek watersheds which are located in Arkansas.

16. Until the last several years, the Water Supply was clean and free from excessive algae growth that consumes oxygen in the water, i.e., non-eutrophic. From 1975 to 1995, however, the phosphorus concentrations in Spavinaw Creek and the watershed tripled and the nitrate and nitrite concentrations doubled. The dramatic increase in these nutrients in the Water Supply over stimulated the growth of algae in the lakes, causing the current state of eutrophication which threatens the aquatic life in the lakes and the future health, dependability and both the short and long term utilization of the Water Supply System. These deleterious conditions in the Water Supply coincide with and were directly caused by the acts and omissions

of the Defendants, and the meteoric growth in their business and pollution activities in the watershed, as hereafter described.

### Poultry Defendants' Pollution of the Water Supply

17.     Each of the Poultry Defendants is in the business of processing chickens, turkeys and/or hogs at plants in Arkansas, as well as other locations. These Defendants slaughter the animals, process food products and sell the products on the retail and wholesale markets. This industry is a so-called 'vertically integrated industry'. These Defendants, or "Integrators" as they are known, control all stages of production, and together comprise the overwhelming market share of the chicken production in the United States.

18.     Farming operations are an integral and vital part of the Poultry Defendants' business. To ensure the quality and quantity of their chicken production, the Poultry Defendants contract with individuals or small business owners ("Growers") to raise the Poultry Defendants' chickens or other poultry. The Poultry Defendants deliver small chickens to the Growers, and thereafter dictate all aspects of the chickens' care and handling, all the while retaining ownership of the flocks. The Poultry Defendants determine and provide the type of feed to be fed to the chickens, any medications to be administered, the time of feeding, the quantity of feed, and the amount of light and water. They also dictate the price the Growers receive for raising chickens, the design and specifications of the buildings and equipment used by the Growers, and the labor necessary for raising the chickens. When the flocks mature to the point they meet the standards set by the Poultry Defendants, the Poultry Defendants pick up the flocks and deliver new flocks of baby chickens. This process has occurred, is occurring, and will continue to occur approximately five times a year, making each Growers' poultry farming operations captive and dedicated solely to the Poultry Defendants. The Poultry Defendants so dominate and control the actions and activities of each and every Grower that their relationship

cannot be described as one of an independent contractor, but rather that of employer and employee or principal and agent.

19.     The Poultry Defendants own the chickens and other poultry and the feed the birds are fed, and therefore are responsible for the waste generated during the raising of the birds.  The Poultry Defendants have failed to properly dispose of that waste.  Instead, they have arranged for that disposal through their contracts with the Growers by directing or permitting the Growers to dump the waste on the land under the guise of using the waste to replace commercial fertilizer the Growers and Poultry Defendants might otherwise purchase for their operations. Plaintiffs believe that in some instances the Growers give away or sell the waste to other property owners in the watershed who also land apply the waste ostensibly in lieu of commercial fertilizer.  Vast amounts of chicken feces and other debris are stored all over the watershed on the Growers' property waiting to be land applied.  Several times a year the accumulated waste is impacted by rain or other precipitation during storage, thereby turning the dry poultry waste into highly mobile liquid manure that readily migrates from the storage location.  By failing to properly dispose of their poultry waste, and instead contracting for disposal in this fashion, the Poultry Defendants have realized enormous savings in their operations.

20.     The waste generated by the Poultry Defendants' operations is rich in phosphorus and nitrogen.  Each year the Poultry Defendants allow or direct the land application of 170 million pounds of waste in the watershed.  By disposing of this enormous amount of poultry waste with such frequency and on such a limited area, the Poultry Defendants' disposal practices long ago exceeded the natural capacity of the soils and vegetation to absorb all of the phosphorus and nitrogen.  As a direct consequence of these improper waste disposal practices, when the excess phosphorus and nitrogen applied on or in the soils is impacted by rain and other

precipitation, the storm water run off carries these substances into the watershed, and ultimately into Tulsa's Water Supply.

21.    The concentration of Poultry Defendants' operations in the watershed is massive, having increased by geometrical proportions in recent years.  At present it is estimated that there are over 300 farms, consisting of over 1000 bird houses in the watershed, which house more than 85.5 million birds annually.  These birds produce an estimated 85 thousand tons of litter and other waste in the watershed each year.  This volume of waste contains more than 3 million pounds of phosphorus and 8 million pounds of nitrogen annually.  Although only some of this volume reaches the streams and creeks which feed Lake Eucha and Lake Spavinaw, it is sufficient in quantity to be directly responsible for the rapidly increasing level of phosphorus and nitrogen in the Water Supply in recent years, and is the proximate cause of the eutrophication occurring in the Water Supply.

22.    The Poultry Defendants have been aware of the rapidly increasing problems and pollution they are causing to the Water Supply for the past several years.  The Poultry Defendants know that the unprecedented concentration of farming operations they carry on in the watershed, and the constant land application of huge amounts of waste in excess of the uptake capacity of the plants and soils, are not in keeping with normal agricultural operations and best management practices.  Notwithstanding Plaintiffs' pleas and demands to eliminate the land application of waste in the watershed, the Poultry Defendants have continued to pollute the Water Supply.

## Municipal Defendant's Pollution of the Water Supply

23.    Decatur operates a waste water treatment plant to treat its city waste water. In addition, Poultry Defendant Peterson utilizes Decatur's water treatment plant to process the waste water discharge from its processing plant located in Decatur, and thereby avoids the

requirements which would otherwise pertain to Peterson if it were to apply for a proper discharge permit of its own. On information and belief, over 90% of the effluent from Decatur's water treatment plant is attributable to Peterson's chicken processing plant discharge.

24.     Decatur's waste water discharge is permitted by the Arkansas Department of Environmental Quality (ADEQ), pursuant to its delegated National Pollution Discharge Elimination System (NPDES) authority from the U.S. Environmental Protection Agency. This treatment plant has a design for continuous discharge capacity of 1.6 million gallons per day. It discharges to Columbia Hollow via the Decatur Branch, which then flows into Spavinaw Creek. In the past Decatur has exceeded its permit requirements on numerous occasions for various water constituents.

25.     The NPDES permit issued by ADEQ contains no numerical limits for phosphorus. Decatur is required only to monitor and report its discharge periodically. It therefore can discharge any quantity of phosphorus, and thus its permit provides no protection for the water quality for downstream users such as Plaintiffs. This fact is particularly significant in view of Peterson's use of Decatur's permit to attempt to legitimize Peterson's own phosphorus laden effluent. Decatur discharges 10 tons of phosphorus per year to the Spavinaw watershed. This constitutes approximately 60% of the phosphorus load to Spavinaw Creek, and approximately 25% of the phosphorus to Lake Eucha.

26.     The Municipal Defendant therefore contributes jointly with the Poultry Defendants to the pollution of the Water Supply. It has been made aware of its contribution by the Plaintiffs, but like the Poultry Defendants it continues the acts and omissions that have damaged and will continue to damage the Water Supply.

## Plaintiffs' Damages and Irreparable Harm

27.     The Poultry and Municipal Defendants' operations, acts and omissions in the watershed have and will continue to have an extraordinary pollution and contamination impact on the Water Supply.   Both the States of Oklahoma and Arkansas, by statute and regulation, have declared that it is illegal to interfere with the enjoyment of, or pollute the waters of the State.

28.     Each of these Defendants, jointly and severally, has interfered and continues to interfere with and deprive Plaintiffs and the public of their use and enjoyment of the water at Lakes Spavinaw, Eucha, and Yahola. Each of the Defendants has caused and continues to cause the pollution of the Tulsa's Water Supply through the wrongful discharge of waste and other pollutants into the Spavinaw watershed.  Their activities present an ongoing or immediate threat of endangerment to the environment.

29.     The Plaintiffs have suffered actual and special damages as a result of Defendants' activities.  Since 1997 Plaintiffs have incurred costs of approximately $700,000 in the investigation of, and formulation of response actions for, the contamination caused by the Defendants.  In addition, the Plaintiffs have incurred response costs and expenses totaling over $3.3 million for additional water treatment and other measures necessary to make the City of Tulsa Water Supply potable for northeastern Oklahoma residents and protect the environment.

30.     The continued pollution caused by these Defendants will result in future costs and expenses to investigate and treat the problem until a final remedy is developed and implemented, and the phosphorus load on the Water Supply declines to a non-eutrophic state, or if unabated, until the current Water Supply is totally destroyed.  These future costs are expected to be not less than $1.5 million per year, and will likely increase as the problem worsens.

31.     The eutrophication of the Water Supply caused by excessive nutrient loading in the watershed attributable to Defendants' conduct is continuing, progressive and will increase at geometric rates if their unlawful, unwarranted and unreasonable practices are not abated.  Until the Winter of 2000, Plaintiffs did not have to use a substitute source of water and have been able to adequately treat the Water Supply to eliminate health concerns and most taste and odor problems to make the water comply with safe drinking water standards.  However, the eutrophication and other pollution will be untreatable and the damage to the Plaintiffs and the public will be the permanent loss of the Water Supply if Defendants are not prevented from continuing their current activities.  The current and continuing harm will therefore result in irreparable damage.  Injunctive relief to prevent such future and continuing irreparable harm is therefore appropriate and permitted by law, including not only the immediate cessation of land application of chicken litter and other waste by the Poultry Defendants and the discharge of excessive phosphorus in the effluent of the Municipal Defendant, but also, where warranted, the removal of phosphorus saturated soils in the watershed by the Poultry Defendants.

## FIRST CLAIM FOR RELIEF

### (Cost Recovery and Contribution Under CERCLA §§ 107 and 113 Against Poultry Defendants Only)

32.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 31 above.

33.     Each Plaintiff and each Poultry Defendant is a "person" within the meaning of § 101(21) of CERCLA.

34.     The Water Supply is a "facility" within the meaning of § 101(9) of CERCLA.

35.   "Hazardous substances" within the meaning of CERCLA § 104(14), including in particular but not limited to phosphorus, which is a listed hazardous substance, were disposed of in the Water Supply, through the Poultry Defendants' activities and operations, resulting in "releases" and /or "threatened releases" (within the meaning of CERCLA § 102(22)) of hazardous substances into the Water Supply.

36.   As a result of such releases or threatened releases, Plaintiffs have incurred, and will continue to incur, necessary response costs (as defined in 42 U.S.C. § 9601(25)) in a manner consistent with the National Contingency Plan (NCP), or alternatively, not inconsistent with the NCP.

37.   By reason of the foregoing, Plaintiffs are entitled under CERCLA § 107 to recover from the Poultry Defendants, jointly and severally, all of Plaintiffs' past and present necessary response costs.

38.   Plaintiffs are also entitled to a declaratory judgment holding the Poultry Defendants jointly and severally liable for future necessary response costs incurred by Plaintiffs.

39.   Plaintiffs have not contributed to the pollution of the facility alleged above and are therefore without liability as an owner of such facility.  Alternatively, if Plaintiffs are not deemed without fault, Section 113(f) of CERCLA provides that "any person may seek contribution from any other person who is liable or potentially liable under CERCLA § 107(a)," and "the court may allocate response costs among responsible parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f).

40.   In the alternative to Plaintiffs' CERCLA § 107 claims for direct costs, Plaintiffs are entitled to a judgment under CERCLA § 113 against the Poultry Defendants for

contribution to Plaintiffs' response costs, as well as declaratory judgment that Poultry Defendants are liable for contribution to Plaintiffs' future response costs.

## SECOND CLAIM FOR RELIEF

### (Pollution of City Water Supply in Violation of 11 O.S. §37-115)

41.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 40 above.

42.     Defendants' acts and omissions have caused the release of a hazardous substance into or other pollution of the Water Supply, resulting in damage to Tulsa's municipal Water Supply in violation of 11 O.S. § 37-115.

43.     As a direct result of Defendants' conduct, Plaintiffs have incurred, and will continue to incur in the future damages and response costs, attorneys' fees, and costs as alleged above.

44.     Defendants' continuing wrongful conduct and damage to Plaintiffs' Water Supply results in irreparable injury and therefore justifies injunctive relief, both temporary and permanent, to force Defendants to stop discharging pollutants into the Water Supply.

45.     By reason of the foregoing and Defendants' violation of 11 O.S. § 37-115, Plaintiffs are entitled to recover against the Defendants, jointly and severally, judgment for injunctive relief and actual and consequential damages, including attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### (Nuisance)

46.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 45 above.

47.     Defendants' wrongful conduct, as alleged above, has subjected and continues to subject Plaintiffs to unreasonable inconvenience, annoyance, loss of use, and

interference with the enjoyment of Plaintiffs' Water Supply, and further causes an unreasonable safety hazard to Plaintiffs' and the public's property, thereby constituting a private and public nuisance under both Oklahoma law and Arkansas law, as may be applicable to the respective Defendants.

48.     By statute, Defendants' pollution of the waters of the State of Oklahoma is against the public policy of Oklahoma, pursuant to 82 O.S. § 1084.1, and constitutes a public nuisance, *per se*, pursuant to 27A O.S. § 2-6-105.

49.     The nuisance created by the Defendants is recurring and permanent, and the injuries caused thereby are substantial, tangible, and continuing.

50.     By reason of the foregoing, Plaintiffs are entitled to an injunction requiring each and all of the Defendants to abate their pollution causing conduct, and to remove from the watershed all the soils which they have caused to be saturated with phosphorus.

51.     Plaintiffs have also incurred, and will incur in the future, special and direct damages, costs and expenses as a result of such public and private nuisance, for which they are entitled to receive compensation and reimbursement from the Defendants, jointly and severally.

## FOURTH CLAIM FOR RELIEF

### (Trespass)

52.     Plaintiffs re-allege and incorporate by reference all of the allegations in paragraphs 1 through 51 above.

53.     Defendants' wrongful conduct, as alleged above, was committed intentionally and knowingly, whether or not Defendants intended or knew of the consequences of their acts at the time they were committed.   The consequences of their individual acts have caused a physical invasion of and interference with the Plaintiffs' Water System, and the public's rights therein.

54.     Defendants have therefore committed a trespass upon Defendants' property, under both Oklahoma law and Arkansas law, as may be applicable to the respective Defendants, for which they are jointly and severally liable for all damages, costs and expenses which Defendants have incurred, and will incur in the future.

55.     Defendants' conduct is continuing and persistent, by reason of which Plaintiffs are entitled to injunctive relief to prevent Defendants from further trespassing upon and causing damage to Plaintiffs' property by their pollution causing acts and omissions.

## FIFTH CLAIM FOR RELIEF

### (Negligence)

56.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 55 above.

57.     Each Defendant has a duty to not pollute the Water Supply or engage in other conduct that causes harm to Plaintiffs' property or the public health or environment.

58.     The Poultry Defendants, jointly and severally, have committed acts or omissions which have breached their duty, including but not limited to, applying chicken litter or other waste to the land in such quantities, at such frequencies, and under such conditions so as to exceed the ability of the soils and plants to absorb the phosphorus therein; failing to follow reasonably prudent agricultural management practices; conducting such concentrated animal operations in a confined area so as to exceed the reasonable capacity of the environment to tolerate such activities; failing to take reasonable precautions and use other waste disposal practices to eliminate excessive waste in the watershed; and failing to comprehensively use genetically modified feed to reduce the phosphorus and nitrogen content of the waste.

59.     The Municipal Defendant, jointly and severally, has committed acts and omissions which have breached its duty, including but not limited to, discharging effluent to the

watershed with high phosphorus content, and/or failing to take proper precautions and use reasonably prudent management practices to reduce or eliminate phosphorus, a known hazardous substance, from such discharge.

60.    Each Defendant knew or should have known, and could reasonably foresee that their activities would result in the pollution of the Water Supply to the detriment of Plaintiffs.

61.    Defendants' acts and omissions have combined to directly and proximately cause, and/or constitute a substantial factor in causing, the past, present and future harm and damages alleged above.

62.    As result of Defendants' negligent acts and omissions, Plaintiffs are entitled to recover from Defendants, jointly and severally, for all of the damages proximately caused thereby.

## SIXTH CLAIM FOR RELIEF

### (Negligence Per Se)

63.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 62 above.

64.    By the negligent conduct described above, the Defendants, or some of the Defendants, have violated one or more of the following federal laws and regulations, and applicable state laws and regulations of Oklahoma and Arkansas, and thereby caused the damages and harm alleged above:

(a)    42 U.S.C. § 9607
(b)    33 U.S.C. § 1311 and 1342
(c)    42 U.S.C. § 6972(a)(1)(B)
(d)    27A O.S. § 2-6-105
(e)    27A O.S. § 2-6-205
(f)    29 O.S. § 7-401
(g)    11 O.S. § 37-115

(h)     50 O.S. § 1
(i)     82 O.S. § 1084.1
(j)     2 O.S. § 9-202 et seq.
(k)     2 O.S. § 10-9.1 et seq.
(l)     OAC 785:45-5-19
(m)    OAC 35:17-3-1 et seq.
(n)     OAC 35:17-5-1 et seq.
(o)     A.C.A. § 8-4-217
(p)     A.C.A. § 8-6-205
(q)     APCEC Reg. 5
(r)     APCEC Reg. 6

65.     Plaintiffs and the public are within the class of persons intended to be protected by the forgoing statutes and regulations, and the damages and harm to the Plaintiffs and the public is within the type of harm intended to be regulated or prevented by the foregoing statutes and regulations.

66.     Defendants' violation of such statutes and regulations constitutes negligence *per se*, by reason of which Plaintiffs are entitled to recover from Defendants, jointly and severally, for all of the damages proximately caused thereby.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

67.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 66 above.

68.     Plaintiffs' past and future labor and expense to investigate and treat the Water Supply to rid it of the effects/results of phosphorus deposited there by Defendants' waste disposal practices has conferred and will continue to confer substantial economic benefits on the Defendants.  Plaintiffs have, by their response, incurred the cost of properly disposing of the waste or ameliorating the deleterious effect of which Defendants by law and equity should bear.

69.     Defendants have failed to respond to Plaintiffs' demands to minimize the threat to the public health and the environment or to remediate the conditions at the Water

Supply. Defendants have therefore voluntarily accepted and retained the benefits conferred upon them by Plaintiffs, and will be unjustly enriched if allowed to retain such benefits without compensating Plaintiffs for such expenses.

70.     Plaintiffs are therefore entitled to judgment against the Defendants, jointly and severally, for the value of the benefits which have been and will continue to be conferred upon them by Plaintiffs, and/or disgorgement of all profits which Defendants have derived from their wrongful conduct.

## CLAIM FOR PUNITIVE DAMAGES

71.     The conduct of each Defendant, as alleged above with respect to each of the Second through Seventh Claims for Relief, was committed intentionally, with reckless disregard for the rights of the Plaintiffs and the public, and has continued unabated notwithstanding Plaintiffs' demands for Defendants to alter their conduct.

72.     Based on the seriousness of the hazard to the public, the profits derived by the Defendants by disregarding Plaintiffs' rights, the duration and continuation of Defendants' wrongful conduct, the Defendants' awareness of the consequences of their acts, and their respective financial conditions, Plaintiffs are entitled to recover from each Defendant the maximum amount of punitive damages allowed by applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against the Defendants, jointly and severally, on each of Plaintiffs' Claims alleged above, for the following relief:

(1)     All past monetary damages, costs and expenses incurred by Plaintiffs as a result of Defendants' conduct;

(2)     All future monetary damages, costs and expenses Plaintiffs will incur for so long as Defendants continue their wrongful conduct, or for so long as Plaintiffs suffer the continuing consequences of Defendants' past conduct;

(3)     Injunctive relief requiring Defendants to cease all acts and omission which are causing or contributing to the pollution of Plaintiffs' Water Supply by the excessive phosphorus loading, and further requiring Defendants to remove or otherwise remediate all soils in the watershed saturated with phosphorus that contribute to such pollution;

(4)     Maximum punitive damages allowed by law; and

(5)     All attorneys' fees, court costs, litigation and investigation expenses, and such other response costs as allowed by any applicable federal or state law.

Respectfully submitted,

JURY TRIAL DEMANDED

_KENNETH N. McKINNEY, OBA #006036_
ROBERT L. ROARK, OBA #007619
MARK D. COLDIRON, OBA #001774
PATRICK H. KERNAN, OBA #004983
MICHAEL S. LINSCOTT, OBA #107266
BRENT BLACKSTOCK, OBA #000839
Attorneys for Plaintiffs

OF COUNSEL:

McKINNEY & STRINGER, P.C.
Mid-Continent Tower
401 South Boston, Suite 3100
Tulsa, Oklahoma  74103
Telephone:  918/582-3176
Facsimile:  918/582-1403

RLR/5659.001/10039969_1/slc