UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CITY OF TULSA and THE TULSA METROPOLITAN UTILITY AUTHORITY, | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | )   Case No. 01-CV-0900-CVE-PJC<br>) |
| TYSON FOODS, INC., et al., | )<br>)<br>) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court is the Motion of Deborah S. Thompson and Clarence Jones to Intervene as Party-Plaintiffs (Dkt. # 528). Pursuant to Fed. R. Civ. P. 24, the proposed intervenors (referred to herein as "applicants") seek to intervene in the instant civil action. For the reasons set forth below, the Court finds that the motion should be **denied**.

**Background**

Plaintiffs filed the instant civil action over seven years ago. See Dkt. # 1. This case has been administratively closed since 2003 when, on the eve of trial, the parties settled their environmental dispute. See Dkt. # 465. The settlement resulted in an order approving settlement agreement (Dkt. # 473) (hereinafter "settlement approval order") relating, inter alia, to land application of phosphorus in the Eucha/Spavinaw Watershed ("ESW").[1] See Dkt. # 473. Under the settlement approval order, the parties were to develop a phosphorus risk-based index ("PI") "to govern the terms and conditions

---

[1]   Land application of poultry litter, which contains phosphorus, affects a watershed and contributes to adverse environmental effects. See Dkt. # 528-3, Comprehensive Study of the Grand Lake Watershed, at 8-9.

under which any [poultry litter] may be land applied in the [ESW]." Id. at 15. The purpose of the settlement approval order was to ensure the use of

> [waste] management protocols . . . in the [ESW] to reduce the risk of harm to Plaintiff's Water Supply due to the Land Application of [poultry litter] . . . while at the same time recognizing the right of the Poultry Defendants and their Growers to continue to conduct poultry operations in the [ESW] within such protocols and the importance of clean lakes, safe drinking water and a viable poultry industry to the economies of Northeast Oklahoma and Northwest Arkansas.

Id. at 14. While the settlement approval order acknowledged that "the PI, as developed[2] or with modification, may have broader application or be of interest to other watersheds or parties not involved in the [ESW]," the settlement approval order provided that "the PI shall be developed particularly for the existing physical, geological and hydrological conditions and characteristics of the [ESW]." Id. The settlement approval order further provided that the poultry litter produced in the ESW could be sold or transferred to three groups of individuals, including "any other person who provides written assurance that the Litter will not be Land Applied within the ESW." Id. at 21.

Applicants claim they have a right to intervene in this case because their land adjoining the Grand Lake O' the Cherokees Watershed ("GLW") has been harmed by land application of poultry litter. See Dkt. # 527. Applicants claim that defendants have transported poultry litter from the ESW to the GLW for land application. Dkt. # 528, at 2. According to defendants, however, private non-party landowners in the GLW have purchased the poultry litter from a non-profit entity, BMPs, Inc., or individual poultry owners to "capture its numerous agronomic benefits for their personal lands." Dkt. # 531, at 5. Thus, defendants argue that not only is applicants' motion untimely, but

---

[2]   After the PI team was unable to agree on a PI index, this Court entered an order on February 13, 2004 adopting an interim PI (Dkt. # 499).

also it fails to state any interest relating to the subject matter of the settlement approval order. Id. at 16.

Defendants also note that applicants are plaintiffs in a nuisance action in the District Court for Mayes County, Oklahoma. Dkt. # 531-6. Applicants filed that state court action in 2001, asserting that a subset of the poultry company defendants had injured their properties by contributing "to [the] discharge [of] wastes and wastewaters into tributaries of Grand Lake." Id. at 7. Despite maintaining the separate state action, applicants aver that they may intervene both as of right and permissively here.

In their motion to intervene, applicants seek an order restricting the exportation of poultry litter from the ESW into the GLW. Dkt. # 528-2, at 11-12. Applicants claim that defendants and this Court "are in the same position to control the transport of litter outside the ESW, [] as they have controlled the transport within the ESW." Dkt. # 535, at 7 n.5. Alternatively, applicants seek an order imposing the same or similar restrictions as the current settlement approval order, but in an entirely different watershed. Dkt. # 528-2, at 12. Applicants claim that "intervention is sought here for the specific purpose of invoking the Court's supervisory power and authority in overseeing and enforcing the settlement's implementation." Dkt. # 535, at 9. Applicants further claim that their motion is not untimely, as they are not "seeking to enter an action late in the discovery process, let alone on the eve of trial." Dkt. # 527, at 6. According to applicants, they filed their motion a "short time" after discovering the alleged nuisance. Id.

### Intervention as of Right

Fed. R. Civ. P. 24(a)(2) "requires courts to exercise judgment based on the specific circumstances of the case." San Juan County, Utah v. United States, 503 F.3d 1163, 1199 (10th Cir.

3

2007). An applicant must satisfy four prerequisites to intervene as of right under subsection (a)(2): (1) the motion must be timely; (2) the applicant must claim an interest relating to the property or transaction that is the subject of the action; (3) the applicant's interest must be potentially impaired or impeded; and (4) the applicant's interest must not be adequately represented by the existing parties to the action. Elliot Ind. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005); see San Juan County, 503 F.3d at 1188. An applicant's failure to satisfy each of these prongs will result in a denial of the motion. See San Juan County, 503 F.3d at 1207 (finding that the applicant could not intervene as of right because it did not establish inadequate representation, the fourth requirement); In re Kaiser Steel Corp., 998 F.2d 783, 791 (10th Cir. 1993) ("We need not address all four requirements which give rise to a right to intervene, inasmuch as both [applicants] have failed to show that they have a 'significantly protectable interest' in the [bankruptcy] Proceeding."); Keith v. Daley, 764 F.2d 1265, 1268 (7th Cir. 1985) ("The applicant has the burden of proving each of the four elements of intervention as of right; the lack of one element requires that the motion to intervene be denied."). The Court addresses the threshold issue of timeliness first.

Timeliness

The issue of timeliness is a case-specific inquiry. NAACP v. New York, 413 U.S. 345, 366 (1973). While "[c]ourts are normally reluctant to grant a motion to intervene at a late stage in the proceedings or after entry of judgment[,]" the facts of a case may dictate otherwise. Sanguine, Ltd. v. U.S. Dept. of Interior, 736 F.2d 1416, 1419 (10th Cir. 1984). The Tenth Circuit has held that the "timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Utah Ass'n of Counties v.

Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001). Some courts have also considered whether intervention will interfere with the orderly processes of the court. See Brown v. Bd. of Ed. of Topeka, 84 F.R.D. 383, 399 (D. Kan. 1979) ("Post-judgment interventions are generally disfavored because of the assumption that they will (1) prejudice the rights of existing parties, and (2) interfere with the orderly processes of the court.").

The Court finds that the circumstances of this case do not merit intervention four and a half years after the entry of the settlement approval order. To the extent applicants allege that they have an interest in this case, they admit to knowing of this interest — i.e., that non-party landowners within the GLW have been purchasing poultry litter from operations in the ESW — since the "summer" of 2007. Dkt. # 535, at 6. While the Court acknowledges that the length of time between this alleged discovery and applicant's intervention motion is not significant, this single factor is not determinative.

The balance of prejudice clearly weighs in favor of denying intervention. Applicants are seeking injunctive relief that would expand the geographic scope of the settlement and impair its feasibility by limiting defendants' means of complying with the settlement approval order. In essence, applicants want an order restricting the exportation of poultry litter from the ESW to the GLW, or alternatively, an order imposing the same or similar restrictions on the GLW as the current settlement approval order. Dkt. # 528-2, at 11-12. The GLW, however, was never a part of the current settlement approval order. The GLW is an entirely different watershed.[3] Thus, the practical

---

[3] According to an exhibit submitted by the applicants, the GLW is a "large and complex watershed that spans four states and two [Environmental Protection Agency] regions." Dkt. # 528-3, at 6. While "the reservoir itself is entirely in Oklahoma, nearly 90% of the watershed rests in neighboring Kansas and Missouri." Id. Therefore, the applicants claims raise new issues such as choice of law and judicial authority.

5

effect of applicant's proposed intervention is to greatly prejudice the existing parties to this action. Applicants' proposed intervention would require defendants to litigate the utilization of poultry litter by non-party landowners in the GLW when this case never encompassed non-party landowners in the GLW. Even applicants admit that if they sought "limited injunctive relief" and nothing more, defendants still would have to expend additional time and funds to defendant itself on issues such as: (i) whether the GLW was experiencing "excessive phosphorus-loading," and (ii) whether the exporting of poultry litter from the ESW to non-party landowners in the GLW likely contributed to "such phosphorus overloading." Dkt. # 535, at 6 n.3. The Court finds that litigation of such issues would require extensive factual development and judicial findings and would be tantamount to trying applicants pending state nuisance claims here.[4]

Applicants wish to extend the Court's jurisdiction beyond the boundaries of the ESW to the GLW — a watershed that was never at issue in this case — four and a half years after the settlement approval order. Contrary to applicants' assertion, intervention in this case will not result in simply

---

[4] Contrary to applicants' contention, this finding does not "address the ultimate merits of Intervenors' claims." Id. at 7 n.5. Regardless of the merits of applicants' claims, this Court must address whether the questions invoked by potential intervention would prejudice existing parties. Additionally, the quote from Brennan v. N.Y.C. Board of Education, 260 F.3d 123, 129 (2d Cir. 2001), which applicants use to support their argument, deals with the adequacy of interest factor — a factor totally irrelevant to the "prejudice to existing parties" inquiry.

adding a new party and reviving recent settlement discussions.[5]  Compare Sanguine, 736 F.2d at 1419 (permitting intervention thirty-four days after entry of consent decree).  Instead, intervention presents applicants, who are strangers to the parties' detailed negotiated settlement, an impermissible opportunity to rewrite the compliance portion of the settlement agreement nearly four and a half years after approval.  See San Juan County, 503 F.3d at 1189 ("[A]n intervenor has no power to veto a settlement by other parties.").  Applicants may not "get[] at settled issues through the back door," U.S. Metropolitan District Commission, 679 F. Supp. 1154, 1161 (D. Mass. 1988), and this Court will not permit the existing parties to be so unduly prejudiced.

Further, applicants will not be prejudiced by the Court's denial of their motion.  Applicants already are seeking an injunction in their pending state nuisance action.  See Dkt. # 531-6, at 11.  Thus, even if this Court denies intervention, applicants may still seek to curtail litter utilization in the GLW in their pending suit.  Under all of these circumstances, therefore, the Court concludes that applicants' motion is untimely, and that they may not intervene as of right.

---

[5]  Applicants' argument that this case is analogous to Natural Resources Defense Council v. Costle, 561 F.2d 904 (D.C. Cir. 1977), is misplaced.  Costle held that the applicant's intervention was timely because they sought to "participate in upcoming" settlement discussions.  Id. at 908 (emphasis added).  Costle found that the applicants did not seek to undo or rewrite the parties' settlement agreement, but instead "sought to participate in its future administration, were it to be approved."  Id.  Here, applicants cannot possibly claim that they are seeking to participate in upcoming settlement discussions pertaining to the ESW, as (1) the parties approved the settlement four and a half years ago, and (2) the applicants seek to participate in the administration of the settlement only to extend its scope to an entirely unrelated watershed.  Unlike in Costle, applicants' participation here would not "benefit" the court or the parties in resolving the subject matter of the settlement approval order.

**Permissive Intervention**

Fed. R. Civ. P. 24(b)(1) provides that a court has discretion to permit anyone to intervene who: (1) files a timely motion, and (2) "has a claim or defense that shares with the main action a common question of law or fact." Subsection (b)(3) adds, moreover, that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Thus, if a court finds a motion to be untimely under intervention as of right, likewise the motion cannot be timely under permissive intervention. See Heartwood, Inc. v. U. S. Forest Serv., 316 F.3d 694, 701 (7th Cir. 2003) ("[P]ermissive intervention similarly is proper only where the application was timely, and therefore the same problem is presented as with the intervention as of right."). Here, because the Court has found that applicants' motion is untimely and that the balance of prejudice weighs heavily in favor of denying intervention, applicants' request for permissive intervention also should be denied.

**Conclusion**

The Court concludes that applicants' motion should be denied both as to intervention as of right and as to permissive intervention. In light of this conclusion, therefore, the Court need not consider the parties' arguments with respect to abstention or limited jurisdiction.

**IT IS THEREFORE ORDERED** that the Motion of Deborah S. Thompson and Clarence Jones to Intervene as Party-Plaintiffs (Dkt. # 528) is hereby **denied**.

**DATED** this 18th day of January, 2008.

_(signed)_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT